UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Susan Butler, | Case No. 0:23-cv-3144 (KMM/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Hartford Life and Accident Insurance Company and CBIZ, Inc., | |
| Defendants. | |

---

Plaintiff Susan Butler alleges that she is entitled to recover plan benefits as the beneficiary of her late husband's two life insurance policies. Ms. Butler asserts breach of contracts (Counts III and VI), breach of express or implied contracts (Counts IV and VII), quantum meruit (Counts V and VIII), and two claims under the Employee Retirement Income Security Act of 1974 against her husband's former employer, CBIZ, Inc., and Hartford Life and Accident Insurance Company (Counts I and II).

This matter is before the Court on the Motions to Dismiss filed by CBIZ, Inc. and Hartford Life and Accident Insurance Company. ECF Nos. 32, 38. For the reasons addressed below, CBIZ's motion is **DENIED in part** and **GRANTED in part**. Hartford's motion is **GRANTED**.

## I.    BACKGROUND

### *The Parties*

Plaintiff Susan Butler is a resident of Lakeville, Minnesota. Amend. Compl. ¶ 1, ECF No. 31. Ms. Butler was married to Patrick Butler for 26 years, and they had three children together. *Id.* ¶ 7. Mr. Butler was employed by CBIZ for approximately six years in its Minneapolis office as a Senior Tax Manager. *Id.* ¶ 8. He died on April 25, 2023, after a battle with colon cancer. *Id.* ¶ 9.

Defendant Hartford Life and Accident Insurance Company ("Hartford") is a Fortune 500 company that provides property and casualty insurance to the public. *Id.* ¶ 10. Defendant CBIZ, Inc. ("CBIZ") is a publicly traded company that provides accounting, financial, benefits, and insurance services to organizations and individuals throughout the United States. *Id.* ¶ 11.

### *The Life Insurance Policies*

Patrick Butler took advantage of the opportunity provided by his job with CBIZ to sign up for several insurance plans. *Id.* ¶ 12. Among these were two life insurance policies: one with a death benefit of $430,000, and the other with a death benefit of $50,000. *Id.* ¶ 13. The life insurance policies were part of an employee welfare benefit plan sponsored and maintained by CBIZ and governed by the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA" or "the Plan"). *Id.* ¶ 14. CBIZ functioned as Mr. Butler's employer, the plan sponsor, and administrator. *Id.*

Hartford acted as the life insurance coverage's insurer and claim fiduciary at all relevant times. *Id.* Mr. Butler's beneficiary under the relevant life insurance policies was

Ms. Butler. *Id.* Under the terms of the Plan, Hartford is identified as having "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." *Id.* ¶ 36.

### Patrick Butler's Cancer Diagnosis and Disability

Patrick Butler was diagnosed with incurable colon cancer in 2019. *Id.* ¶ 15. Mr. Butler continued working at CBIZ to support his family until, on February 15 or 16, 2022, he went on short-term disability through a separate insurance policy provided by CBIZ through Hartford. *Id.* ¶ 16. His cancer progressed, and in August 2022, Mr. Butler went on long-term disability through a policy provided by Hartford. *Id.* ¶ 17. On or around August 2022 in a letter to Mr. Butler, Hartford advised him to "please contact your employer to verify if you may be eligible for the Group Life benefit." *Id.* ¶ 37.

CBIZ, in turn, represented to Mr. Butler that he was eligible for and continued to be enrolled in the Plan for life insurance coverage until the time of his death. *Id.* ¶ 38. At about the same time, Mr. Butler received a monthly premium breakdown from CBIZ for all of his insurance policies, which included the life insurance policies in question, as well as those covering his wife's and children's lives and those covering accidents and illnesses. *Id.* ¶ 18. CBIZ informed Patrick Butler that so long as he remitted to CBIZ the monthly sum of $213.64, CBIZ would forward those sums to Hartford, and Patrick Butler would retain his life insurance and other policies. *Id.* ¶ 19. The $213.64 monthly payment for these policies was paid to CBIZ by Patrick Butler, and then by Susan Butler after Patrick Butler was no longer able to do so. *Id.* ¶ 20. CBIZ then sent the money for Patrick Butler's life insurance policies, and Hartford accepted these funds. *Id.* ¶ 21–22. At no point in time

did Hartford inform Patrick Butler that the life insurance policy he was paying for was terminated or otherwise not in place until after Hartford collected premiums for over a year and Patrick Butler passed away. *Id.* ¶ 23.

### *Hartford's Refusal to Pay Death Benefit*

On April 25, 2023, Patrick Butler passed away at the age of 51. *Id.* ¶ 24. Subsequently, Susan Butler provided Hartford with Patrick Butler's death certificate and requested payment of the death benefit. *Id.* ¶ 25. In April 2023, a "Current Benefit Elections" document made available to Ms. Butler showed the following in connection with Mr. Butler's life insurance coverages:

(a)    "Coverage Start Date of 1/1/2023";
(b)    "Coverage End Date" followed by a blank space,
(c)    "Participating" following by . . . "Yes";
(d)    "Coverage Approved" of $430,000 and $50,000.

*Id.* ¶ 39.

In a letter dated June 5, 2023, Hartford responded to Ms. Butler, stating that Hartford would not be paying the death benefit because it maintained that Patrick Butler had left CBIZ on or around February 15 or 16, 2022, the date he went on short-term disability. *Id.* ¶ 26. Hartford denied Ms. Butler's claim for benefits on the grounds that Mr. Butler's coverage had purportedly terminated before his death given that he had not exercised of a conversion right. *Id.* ¶ 41. Hartford did not explain why it had been collecting payments for a policy that had terminated, nor did it agree to refund the premiums it had collected during the period Patrick Butler was purportedly not covered. *Id.* ¶ 27.

Ms. Butler received a letter from Hartford informing her that she had 60 days to challenge its decision. *Id.* ¶ 28. Ms. Butler retained an attorney and appealed Hartford's decision. *Id.* ¶ 29. In a letter dated August 2, 2023, Hartford sent a letter to Ms. Butler's counsel upholding its decision and denying her claim. *Id.* ¶ 30. This lawsuit followed.

In its pending motion, CBIZ argues that Ms. Butler's state law claims are preempted by ERISA. As for Ms. Butler's ERISA claims, CBIZ alleges that it did not owe Ms. Butler or the Decedent duties under ERISA, state law, or the terms of the Plan and that the ERISA claims fail because CBIZ lacks discretion to determine benefits under the Plan; in the alternative, CBIZ argues that even if entitled, the Plan provided Decedent with notice of the deadline for exercising a conversion right. Similarly, Hartford argues that Ms. Butler's state law claims are preempted by state law, and that Ms. Butler failed to state an ERISA claim against Hartford.

The Court agrees with the Defendants that Ms. Butler's state law claims are preempted by ERISA. As it relates to the ERISA claims, Count I is dismissed as to both CBIZ and Hartford, and Count II is dismissed as to Hartford.

## DISCUSSION

### I.     Legal Standard

To survive a motion to dismiss, a complaint must allege sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations that raise only a speculative right to relief are insufficient. *Twombly*, 550 U.S. at 555. A district court accepts as true all of the plaintiff's factual allegations and views them in the light most

favorable to the plaintiff. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). But legal conclusions couched as factual allegations are not given the same deference. *Twombly*, 550 U.S. at 555. And mere "labels and conclusions" as well as a "formulaic recitation of the elements of a cause of action" are not enough to state a claim for relief. *Id.*

## II.     Preemption of State Law Claims (Counts III, IV, V, VI, VII, and VIII)

ERISA defines an employee welfare benefit plan as "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants [specified] benefits. . . ." 29 U.S.C. § 1002(1). For a plan, fund, or program to fall within ERISA's scope, "a reasonable person must be able to 'ascertain the intended benefits, a class of beneficiaries, source of financing, and procedures for receiving benefits.'" *Nw. Airlines, Inc. v. Fed. Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)).

Defendants argue that the state law breach of contract, breach of express or implied contract, and quantum meruit claims should be dismissed because they are preempted by ERISA. The Court agrees. ERISA contains a broad preemption clause that states that its provisions shall "supersede[] any and all State laws insofar as they . . . relate to any employee benefit plan." *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771 (8th Cir. 2006) (quoting 29 U.S.C. § 1144(a)); *see also Painters Dist. Council No 58 v. RDB Universal Servs., LLC*, No. 4:14-CV-01812 ERW, 2016 WL 1366600, at *10 (E.D. Mo. Apr. 6, 2016); *Jump v. Speedway LLC*, 23 F. Supp. 3d 1024, 1029 (D. Minn. 2014); *Schoedinger v. United Healthcare of the Midwest, Inc.*, No. 4:07-CV-904SNLJ, 2011 WL

6

97735, at *8 (E.D. Mo. Jan. 12, 2011)). "[T]he language of ERISA's preemption clause sweeps broadly, embracing common law causes of action if they have a connection with or a reference to an ERISA plan." *Shea v. Esensten*, 107 F.3d 625, 627 (8th Cir. 1997) ("*Shea I*"); *see also, e.g.*, *Thompson v. Gencare Health Sys., Inc.*, 202 F.3d 1072, 1073 (8th Cir. 2000) ("ERISA remedies preempt 'state common law tort and contract actions asserting improper processing of a claim for benefits' under an ERISA plan.") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43 (1987)). "In determining whether a state action 'relates to' an employee benefit plan covered by ERISA, [the Eighth Circuit] employ[s] a two-part test." *Parkman*, 439 F.3d at 771. "A law relates to a covered employee benefit plan for purposes of ERISA if it has (1) 'a connection with' or (2) 'reference to such a plan.'" *Id.* (quoting *Cal. Div. of Labor Stds. Enf't v. Dillingham Constr., Inc.*, 519 U.S. 316, 324 (1997)). To determine whether a state law has a sufficient "connection with" an employee benefit plan, the Court looks "both to the objectives of ERISA . . . as well as to the nature of the effect of the state-law claims on ERISA plans." *Shea v. Esensten*, 208 F.3d 712, 718 (8th Cir. 2000) ("*Shea II*") (quoting *Cal. Div. of Labor Stds. Enf't*, 519 U.S. at 325)).

Breach of contract claims arising out of a dispute over an ERISA policy "relate to" the benefit plan. 29 U.S.C. § 1144(a); *see also Kuhl v. Lincoln Nat'l Health Plan of Kansas City, Inc.*, 999 F.2d 298, 301 (8th Cir. 1993) ("Congress preempted 'all State laws insofar as they may now or hereafter relate to any employee benefit plan.'") (quoting § 1144(a)). And the preemption provision applies to common law breach-of-contract and bad faith claims. *E.g.*, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987); *Fink v. Dakotacare*, 324 F.3d 685, 687–89 (8th Cir. 2003). Therefore, Ms. Butler's state-law claims relate

directly to the Plan. And although she brings said claims "in the alternative to . . . the ERISA claims," as the Defendants have correctly asserted, each state-law count seeks the same relief as the ERISA claims. As written, Counts III through VIII are directly related to the Plan, are preempted in their entirety, and are dismissed.

## III.    Claims for Benefits (Count I)

"A participant in an ERISA plan may bring suit 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Waldoch v. Medtronic, Inc.*, 953 F. Supp. 2d 979, 995 (D. Minn. 2013) (quoting 29 U.S.C. § 1132(a)(1)(B)). *aff'd,* 757 F.3d 822 (8th Cir. 2014), *as corrected* (July 15, 2014). "To assert a claim under this provision, a plan participant must demonstrate that 'he or she has a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)) (cleaned up).

### A.    CBIZ

Ms. Butler alleges that CBIZ wrongfully denied her benefits under the Plan. However, a "claim to recover benefits cannot be brought against an employer under § 1132(a)(1)(B)." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022). Although there is disagreement among the circuits over who should be the defendants under this provision, employers are typically not regarded as suitable defendants. *Id.* (citing *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir. 1998)); *see also Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) (noting that ERISA permits suits to recover

benefits against the plan as an entity and against the fiduciary of the plan and finding that a plan administrator is such a fiduciary).

In *Delker v. MasterCard International, Inc.*, the Eighth Circuit reversed the district court's dismissal of an ERISA claim for breach of fiduciary duties under § 1132(a)(3) against an employer as a "functional fiduciary." 21 F.4th at 1024–28. The Eighth Circuit stated that "[t]he district court accurately observed that an employee's claim to recover benefits cannot be brought against an employer under § 1132(a)(1)(B)," because "an employer is generally not considered to be an appropriate defendant." *Id.* at 1024 (citing *Hall*, 140 F.3d at 1194). Additionally, in *Brown v. J.B. Hunt Transport Services, Inc.*, the Eighth Circuit affirmed the dismissal of the plaintiff's claim under § 1132(a)(1)(B) for improperly naming the employer/plan administrator as a defendant. 586 F.3d 1079, 1088 (8th Cir. 2009). In *Brown*, the Eighth Circuit reasoned that the employer/plan administrator was not a proper defendant where it was "undisputed the Plan require[d] [the insurer], not [employer/plan administrator], to pay . . . benefits" under the ERISA-governed plan. *Id.*

"The proper party in an action concerning ERISA benefits is the party that controls administration of the plan or the plan itself." *Harris v. SWAN, Inc.*, 459 F. Supp. 2d 857, 862 (E.D. Mo. 2005) (citing *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998)); *see also Brant v. Principal Life & Disability Ins. Co.*, 6 F. App'x 533, 535 (8th Cir. 2001) (per curiam) (holding both plaintiff's employer and the insurance provider "were proper defendants in such an action [(a breach of fiduciary duty action under ERISA based on the denial or refusal to pay plan benefits)]" where the agreement "gave them discretionary authority to determine eligibility for benefits and to construe the terms of the plan");

9

*Anderson v. Nationwide Mut. Ins. Co.*, 592 F. Supp. 2d 1113, 1133 (S.D. Iowa 2009) (noting "several district courts in the Eighth Circuit have agreed that a party's actual role in an ERISA plan, rather than its named role, will determine whether it administered the plan and, thus, whether it can be a named defendant in a [§ 1132(a)(1)(B)] suit") (collecting cases).

In light of this case law, the Court agrees with CBIZ that it is not a proper defendant for the claim under 29 U.S.C. § 1132(a)(1)(B) set out in Count I. First, the plan language of the Plan makes it clear that Hartford is the party that controls the Plan and determines eligibility, not CBIZ. As the court explained in *Delker*, merely administering an ERISA plan is not enough to establish liability. 21 F.4th at 1024; *see also Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) ("It is true that ERISA permits suits to recover benefits only against the plan as an entity[.]"); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) ("ERISA permits suits to recover benefits only against the Plan as an entity."). Per the Plan's designated "ERISA INFORMATION," CBIZ is the plan sponsor and administrator. Kostolnik Decl., Ex. A at 38, ECF No. 36. But Hartford is the designated "claims fiduciary" with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions" of the Plan, to the extent permitted by state law. *Id.*

Ms. Butler alleges that when Hartford directed Mr. Butler to "please contact your employer to verify if you may be eligible for the Group Life benefit," Hartford delegated authority to CBIZ to determine whether Mr. Butler continued to remain eligible for life insurance coverage under the Plan. According to Ms. Butler, CBIZ's representations to Mr. Butler that he was enrolled in the Plan for coverage until the time of his death were

enough to make CBIZ directly responsible. But these facts do not demonstrate Hartford intended to waive its sole discretion to determine benefits under the Plan. Indeed, the Plan expressly states that "[Hartford] [has] full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." Kostolnik Decl., Ex. A at 32. CBIZ asserts that regardless of what it may believe or even recommended regarding an employee's eligibility for Plan benefits, Hartford unequivocally had the final word on any claim for benefits—which discretion and authority Hartford did, in fact, invoke to deny benefits here.

For these reasons, the Court agrees that CBIZ is not a proper defendant on Plaintiff's § 1132(a)(1)(B) claim in Count I.

**B. Hartford**

Section 1132(a)(1)(B) allows Ms. Butler to bring a civil action "to recover benefits due to [her] under the terms of his plan." Hartford argues that Ms. Butler is not entitled to recover benefits under the terms of the Plan because Mr. Butler's life insurance coverage terminated one year after the date he was no longer "Actively at Work," and as a result, Mr. Butler's coverage did not extend beyond February 15, 2023. Ms. Butler argues that § 1132(a)(1)(B) entitles her to benefits owed under the Plan. For the reasons addressed below, the Court disagrees.

**1. Butler's Coverage Under the Plan Post-disability**

The termination of Mr. Butler's life insurance coverage is tied to the end of his time as "Actively at Work:"

11

> Actively at Work means at work with Your Employer on a day that is one of Your Employer's scheduled workdays. On that day, You must be performing for wage or profit all of the regular duties of Your job:
>
> > 1) in the usual way; and
> > 2) for Your usual number of hours.

ECF No. 36-1, Ex. 1, Booklet at 35.

According to the record, Mr. Butler was last Actively at Work on February 15, 2022, following which he began receiving first, STD and then LTD benefits under the Plan. ECF No. 31; Am. Compl. ¶¶ 16–17. However, Butler was eligible for the "Disability Insurance" Continuation Provision because he received LTD benefits under a Hartford group LTD insurance policy. His life insurance coverage was maintained by this continuation provision for a full year after the day he was last Actively at Work. ECF No. 36-1, Ex. 1 Booklet at 23. Consequently, Mr. Butler's life insurance policy remained in effect until February 15, 2023. However, following this date, Mr. Butler did not utilize any conversion or portability rights to convert his existing coverage to an individual conversion policy or to continue his coverage under a group portability policy, and no other Plan provision extended his coverage any further. Mr. Butler therefore lost his life insurance coverage under the Plan as of February 15, 2023. Although Ms. Butler argues that they would have invoked their conversion rights but-for the misinformation they received, they did not do so. Because the plain reading of the Plan under which Mr. Butler was covered is clear, Mr. Butler had no life insurance at the time of his death.

### 2. The 18-month Continuation Provision

Ms. Butler alleges that an alternative 18-month continuation provision should apply, which would have extended Butler's life insurance coverage past the date of his death. This provision, contained in Minn. Stat. § 61A.092, requires certain group life insurance policies providing coverage to Minnesota residents to allow employees to elect 18 months of continuation coverage if the employee is "voluntarily or involuntarily terminated or laid off from their employment." Minn. Stat. § 61A.092. Under this provision, Ms. Butler argues that her husband was covered at the time of his death. The Court disagrees.

First, Ms. Butler's complaint asserts the opposite. Ms. Butler claims that because of the incapacitating physical effects of the cancer that ultimately claimed his life, Mr. Butler ceased working when he went on STD. Am. Compl. ¶ 16. Thereafter, Butler went on LTD, and "[a]t all times material hereto," was employed by CBIZ. *Id.* ¶¶ 17, 32. The Amended Complaint does not assert that CBIZ terminated Butler's employment. In fact, according to the pleadings, Mr. Butler remained a CBIZ employee until his passing. ECF No. 31-2 at 2, 15. In her Amended Complaint, Ms. Butler references an email from the CBIZ Benefits Team stating that "being placed on LTD does not automatically terminate employment." *Id.*

Aside from how the case is pled, Ms. Butler cannot plausibly allege that Mr. Butler was laid off. Ms. Butler alleges that Mr. Butler "lost eligibility for coverage under the Plan due to his reduction in hours at CBIZ." Am. Compl. ¶44. While Section 61A.092 does not define "laid off," it states that "[a]n employee is considered to be laid off from employment if there is a reduction in hours to the point where the employee is no longer eligible for

coverage under the group life insurance policy." Minn. Stat. § 61A.092, subd. 1. But Mr. Butler's reasonable decision to stop working due to his illness, unfortunately, cannot be classified as a "reduction in hours" under the meaning of § 61A.092, subd. 1. And when discussing the connection between an employer and employee following a termination or layoff, Section 61A.092 additionally refers to the "former employer" and "former employee," meaning that the employee must no longer be employed by the employer for the statute to be applicable. Minn. Stat. § 61A.092, subds. 2, 3. Ms. Butler's proffered reading of the term "laid off" is both contrary to the Plan language and to its commonly held meaning.

Because Mr. Butler was not fired or laid off by CBIZ, Section 61A.092 is not applicable. The Court need not analyze whether continuation provisions could be used consecutively to extend continuation coverage beyond 12 months because Section 61A.092 does not apply.

For these reasons, the Court finds that Ms. Butler does not plausibly allege that Mr. Butler was covered by the life insurance polices at the time of his death. The Court therefore dismisses Ms. Butler's claim for benefits against Hartford.

## IV.    Breaches of Fiduciary Duty and Claims for Equitable Relief (Count II)

Ms. Butler also brings claims against CBIZ and Hartford for breach of fiduciary duty and equitable relief under ERISA, pursuant to 29 U.S.C. § 1132(a)(3). She alleges that the Defendants breached their fiduciary duty by misrepresenting Mr. Butler's life insurance coverage status, continuing to accept premiums for coverage from Mr. Butler without taking reasonable steps to confirm whether he was still eligible for coverage, and failing to notify

14

Mr. Butler that his life insurance coverage had or would be terminated. The gravamen of Ms. Butler's argument is that, had she been given the proper information, she could have exercised the conversion and portability rights that were available.

ERISA defines a fiduciary, in part, as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority of control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). A fiduciary is also a person who "has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.*; *Kendall v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers Loc. 793 Pension Plan*, No. 10-cv-3140 (MJD/JJG), 2011 WL 1363996, at *7 (D. Minn. Apr. 11, 2011).

"To plead breach of fiduciary duty under ERISA, a plaintiff must allege that 1) defendant was a fiduciary of the plan, 2) defendant was acting in that capacity, and 3) defendant breached a fiduciary duty." *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1175 (D. Minn 2004) ("*Xcel Energy*") (citing 29 U.S.C. § 1109). An ERISA fiduciary can either be named in the plan or deemed a fiduciary on the basis of their functional authority. *Id.* Additionally, the Eighth Circuit construes fiduciary broadly in this context. *Olson v. E.F. Hutton & Co., Inc.*, 957 F.3d 622, 625 (8th Cir. 1992).

**A. CBIZ**

Ms. Butler alleges that CBIZ breached its fiduciary duties by (1) providing Mr. Butler misleading information about how to maintain his coverage and eligibility; (2) failing to properly notify him of when his coverage would terminate and provide notice of his conversion rights at that time, despite having knowledge of his terminal illness and

request for information; and (3) failing to maintain an adequate administrative system that tracked coverage termination and prevented employees from paying for coverage for which they were no longer eligible. CBIZ argues that Ms. Butler's fiduciary-duty claim under § 1132(a)(3) should be dismissed because it did not owe Mr. Butler any relevant duties. The Court disagrees with CBIZ.

### 1.  CBIZ Acted as Fiduciary

A combination of legal and factual considerations determines whether an organization is considered a functional fiduciary for the purposes of ERISA. *Xcel Energy*, 312 F. Supp. 2d at 1180 (citing *In re Electronic Data Sys.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004)); *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (ERISA fiduciary "cases are inevitably fact intensive"). Here, Ms. Butler alleges that CBIZ provided information related to the Plan, was directly involved in enrollment, and paid employee premiums. These activities can be considered an exercise of discretion with regard to the Plan's administration or management. When interpreting the term "fiduciary" broadly and evaluating the factual allegations in Ms. Butler's favor as required at this stage, her Complaint is adequate to make a plausible claim that CBIZ was acting as a functional fiduciary. *Dapron v. Spire Missouri, Inc.*, 2018 WL 3609446, at *6 (E.D. Mo. July 27, 2018).

### 2.  Sufficient Allegations of Breach of Fiduciary Duty

A fiduciary under ERISA is required to refrain from giving plan beneficiaries materially false information. *Wilson v. Sw. Bell Tele. Co.*, 55 F.3d 399, 405 (8th Cir. 1995) ("An ERISA fiduciary has a duty to avoid making material misrepresentations to plan

beneficiaries, and individual plan beneficiaries have a right of action under ERISA to claim equitable relief for a breach of that duty."). A plaintiff must prove that the defendant's representations were material and that they were relied upon to their detriment in order to assert a claim for breach of this duty. *Knowlton v. Anheuser-Busch Companies, LLC*, No. 4:13-cv-210-SNLJ, 2013 WL 5873334, at *3 (E.D. Mo. Oct. 30, 2013) (citing *James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 449 (6th Cir. 2002)); *see also Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 676 (8th Cir. 1999) (finding that the plaintiffs failed to present evidence of materiality, detrimental reliance, or damage to support their ERISA claim based on allegedly fraudulent misrepresentations). "A representation is material 'if there is a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled.'" *Huang v. Life Ins. Co. of N. Am.*, 47 F. Supp. 3d 890, 910 (E.D. Mo. 2014) (quoting *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007)). Against this backdrop, the Court finds that Ms. Butler has adequately pled a breach of fiduciary duties.

First, Ms. Butler plausibly alleges that CBIZ provided misleading information about how to maintain coverage. Mr. Butler contacted CBIZ, the Plan administrator, to inquire how he could maintain his life insurance coverage for the benefit of his wife and three children. CBIZ purportedly advised him on his benefits and how to maintain that coverage, stating that if he kept making his premium payments, he would remain covered. However, in light of Hartford's later denial of benefits, this information provided by CBIZ was proven to be false.

According to Hartford's denial letter, Mr. Butler's policy could only be continued for one year after he ceased to be active at work. During his initial communications with CBIZ, however, CBIZ allegedly failed to inform Mr. Butler of this limitation, never informed him that his coverage would be terminating at any point, and never accurately advised him about his rights to convert coverage to a different policy. CBIZ made representations that Mr. Butler was entitled to life insurance benefits and in fact remained covered. As a result of those misrepresentations, the Butlers relied on the statements made by CBIZ to their detriment, and failed to elect any conversion coverage after receiving Hartford's November 1, 2022 letter.

In addition, up through the date of his death and after his coverage had apparently terminated, Mr. Butler's "Current Benefit Elections" information, represented that Mr. Butler was "participating" in "approved" life insurance coverage that was still in effect. In sum, a reasonable factfinder could determine that these statements were material misrepresentations regarding the life insurance benefits available to Mr. Butler, and that these misrepresentations further reinforced Mr. Butler's reasonable belief that his life insurance coverage was continuing and that he had taken the necessary steps to maintain it. *Fischer v. Phila. Elec. Co.*, 994 F.2d 130 (3d Cir. 1993).

Ms. Butler further argues that Mr. Butler's terminal cancer diagnosis, and his affirmative requests to CBIZ for information on how to maintain his coverage gave rise to a duty to provide Mr. Butler with the information necessary to do so. This includes but is not limited to notice of his continuation rights and conversion rights, when those rights could be invoked, and notice of when his coverage had terminated.

"ERISA does not contain any provision that requires a plan administrator to provide notice to plan participants other than a summary plan description and information of certain benefits which does not include life insurance conversion rights." *Walker v. Fed. Express Corp.*, 492 F. App'x 559, 565 (6th Cir. 2012); *see also Bicknell v. Lockheed Martin Group Benefits Plan,* 410 F. App'x 570, 575 (3d Cir. 2011) (no obligation in plan documents to provide notice of life insurance conversion rights and plan documents accurately described rights); *Prouty v. The Hartford Life and Accident Ins. Co.*, 997 F. Supp. 2d 85, 90–91 (D. Mass. 2014) (no requirement that summary plan document contain conversion rights, but even so, plaintiff's plan summary did provide adequate and accurate information).

But here, CBIZ had additional specific information about Mr. Butler that put them on notice that he was not a "garden-variety employee." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 102 F. Supp. 3d 1354, 1359 (N.D. Ga. 2015). CBIZ was aware of specific facts related to Mr. Butler's terminal illness, which made the issue of conversion rights significant to him and was allegedly aware that he was attempting to continue his coverage. Read through the proper lens, at this stage, Plaintiff plausibly alleges that CBIZ had a fiduciary duty to provide the Butlers with correct information. Ms. Butler alleges that, had it not been for the misrepresentations made by CBIZ regarding Mr. Butler's coverage, Mr. Butler would have exercised his time-limited conversion coverage right. While CBIZ attributes Mr. Butler's failure to act as the cause of his lack of coverage, on a motion to dismiss, the Court does not take inferences in favor of the movant.

Finally, Ms. Butler alleges that CBIZ maintained an inadequate system to monitor coverage termination, handle inquiries from participants, and communicate between the

fiduciaries and plan participants. These systemic flaws resulted in Mr. Butler being misled about his coverage status, paying premiums for coverage that had allegedly terminated, missing his conversion deadlines, and ultimately being denied the life insurance benefits he had reasonably believed he was entitled to. *See, e.g.*, *Frye v. Metro. Life Ins. Co.*, 3:17-cv-31, 2018 WL 1569485 (E.D. Ark. March 30, 2018) (finding that because the employer's procedures had a "structural administrative defect" that allowed employees to pay for coverage for dependents that were either ineligible or became ineligible, the employer/insurer had breached their fiduciary duties to plaintiff and plaintiff was entitled to relief). For these reasons, Ms. Butler has stated a plausible claim that CBIZ failed to maintain an adequate administrative system, in breach of its fiduciary duties.

Accordingly, the Court declines to dismiss Ms. Butler's fiduciary duty claim against CBIZ. *See Ramsey v. Se. Emp. Benefit Servs., Inc.*, No. 4:07-CV-00790, 2008 WL 4418958, at *2 (E.D. Ark. Sept. 26, 2008) (recognizing at the motion to dismiss stage, the inquiry "is not whether Defendants will ultimately be found to have been fiduciaries, but whether Plaintiffs have alleged sufficient facts . . . which taken as true, create a plausible claim to relief," and that whether a defendant is a fiduciary "is a fact sensitive inquiry" that generally does not lead to dismissal, particularly "where the complaint sufficiently pleads defendants' ERISA fiduciary status") (citation and quotation marks omitted).

### B. Hartford

Ms. Butler asserts that Hartford also breached its fiduciary duties when it continued to accept premiums required for Mr. Butler's life insurance and failed to provide adequate information relating to the life insurance benefits. Hartford argues that Ms. Butler failed to

20

plausibly allege that their actions amounted to a breach of fiduciary duty as it had no duty to provide notice and did not make the misrepresentations that the Butlers relied on. The Court agrees with Hartford that Ms. Butler fails to state a claim against it under § 1132(a)(3).

### 1. Hartford Was Not Required to Provide Notice

Ms. Butler asserts that Hartford failed to provide certain notices to Mr. Butler. Am. Compl. ¶¶ 61. However, such an omission does not amount to a breach of fiduciary duty by Hartford as neither the Plan documents nor ERISA require Hartford to provide such notices.

Hartford is not required by ERISA to inform participants of their conversion and portability rights, when their coverage expires, or whether and how any continuation provisions will apply. *See Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 986 (8th Cir. 1992) ("[T]his Court does not construe ERISA or the regulations under it to require that the appellee had a duty individually to warn, upon their sixty-fifth birthdays, each and all of the members of the plans which it insured that their benefits would be reduced according to the plan's coordination of benefits provision unless they enrolled in Medicare.")); *Powell v. Minn. Life Ins. Co.*, 60 F.4th 1119, 1123 (8th Cir. 2023) ("*Powell II*") (emphasizing that plan administrators are only required to give participants the brief plan description under ERISA) (citing *Vest v. Resolute FP US Inc.*, 905 F.3d 985, 989 (6th Cir. 2018)). Furthermore, Hartford is not required by the Plan to give such notices. *See Powell v. Minn. Life Ins. Co.*, No. 21-cv-2061-CJW-MAR, 2022 WL 1289331, at *7 (N.D. Iowa Apr. 29, 2022) (noting that the group life insurance policy at issue "did not promise to provide such notice to employees").

### 2.  Hartford Did Not Make the Alleged Representations

Ms. Butler alleges that Hartford breached its fiduciary duties related to representations regarding the continuation of Mr. Butler's coverage. Am. Compl. ¶ 61. But Ms. Butler alleges CBIZ made those representations, not Hartford. *Id.* ¶¶ 19, 38, 39, 49, 61. The letter dated November 1, 2022, is the only claimed representation made by Hartford that Ms. Butler cites. But Ms. Butler makes no indication that Hartford was aware of CBIZ's misrepresentations, or adopted them in any way; therefore, Hartford cannot be held responsible for them. *Hogan v. Zuger, Kirmis & Smith, PLLP*, No. 1:23-cv-047, 2024 WL 38706, at *4 (D.N.D. Jan. 3, 2024) (determining that where the employer and plan administrator made false claims that the employee was eligible for coverage and the insurer was unaware of those claims, the insurer did not violate its fiduciary duty to inform the employee of the conversion right). Ms. Butler fails to state a claim that Hartford breached its fiduciary duties related to communications or misrepresentations based on CBIZ's own communications.

### 3.  Surcharge, Estoppel, and Reformation

Ms. Butler's alternate theories as to how Hartford violated § 1132(a)(3) fail as well. "Three equitable theories of recovery may be available in a breach-of-fiduciary-duty claim under § 1132(a)(3): surcharge, reformation, and estoppel." *Powell II*, 60 F.4th at 1123. The Eighth Circuit prohibits estoppel principles from being "used to obtain ERISA benefits that are not payable under the terms of the ERISA plan." *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996). Here, as explored above, the Plan covering Mr. Butler unambiguously terminated on February 15, 2023, several months before his death. While

"[c]ourts may apply the doctrine of estoppel in ERISA cases only to interpret ambiguous plan terms," *id.*, Ms. Butler does not allege that any of the Plan's terms are ambiguous.

In addition, Ms. Butler's allegations focus solely on representations about Mr. Butler's coverage made by CBIZ. Am. Compl. ¶¶ 19, 38, 39, 49. In the absence of any misrepresentation by Hartford, Ms. Butler cannot sufficiently allege ERISA estoppel.

Ms. Butler also has not sufficiently alleged entitlement to reformation of the Plan. Courts can reform contracts that do not "express the agreement of the parties." *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 723 (8th Cir. 2014) (quoting *Amara v. CIGNA Corp.*, 925 F. Supp. 2d 242, 252 (D. Conn. 2012)). Ms. Butler has not made any claims about what or how Plan terms ought to be changed, or how her agreement with Hartford was not captured by the Plan. Ms. Butler requests that the Plan be changed to restore her as a beneficiary and an insured, although these modifications only reflect her disagreement with Hartford's denial of his claim. Ms. Butler has not claimed that any of the Plan's provisions do not accurately reflect the understanding Mr. Butler thought he had with Hartford.[1]

As a result, Ms. Butler has not adequately asserted her claim to any of the equitable theories of recovery in a claim for breach of fiduciary duty as it relates to Hartford.

---

[1] Insofar as an equitable surcharge is a remedy for a claim of breach of fiduciary duty, *see, e.g.*, *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 504 (4th Cir. 2023) (rejecting surcharge claims under Section 1132(a)(3) that seek make-whole monetary relief), Ms. Butler also has not sufficiently pled entitlement to equitable surcharge because the injury and relief sought in Ms. Butler's benefits claim are the same as those in her breach of fiduciary duty action. *Huang v. Life Ins. Co. of N. Am.*, 47 F. Supp. 3d 890, 908 (E.D. Mo. 2014).

### 4.  Accepting Premiums

Finally, Ms. Butler claims that because Hartford continued taking premiums from CBIZ for Butler's life insurance after his coverage ended, that proves Hartford violated a fiduciary duty. But the law does not support this theory of liability. Courts have consistently ruled that mistakenly accepting premiums does not obligate the insurer to offer coverage for which the policyholder would not otherwise qualify. *Hogan*, 2024 WL 38706, at *3 (citing *Sippel v. Reliance Standard Life Ins. Co.*, 128 F.3d 1261, 1263 (8th Cir. 1997) (holding ERISA plan is not estopped from denying coverage based on receipt of premiums)); *see also Fink*, 94 F.3d at 491–92 (holding no coverage for employee who failed to satisfy the ERISA plan's eligibility criteria despite payment of premium); *Kaus v. Standard Life Ins. Co.*, 176 F. Supp. 2d 1193, 1198 (D. Kan. 2001) ("[A] plan ordinarily does not waive its right to deny benefits under a group insurance policy simply by mistakenly accepting premiums.").

In *Hogan*, the court determined that the insurer was not prevented from denying benefits even though it accepted seven years of premium payments. *Hogan*, 2024 WL 38706, at *3. The employee's coverage terminated automatically at the end of his employment, but he continued to pay premiums for life insurance coverage for the next seven years until he died. *Id.* at *1–2. Because the employee was no longer covered when he died, the insurer denied the beneficiary's claim. *Id.* at *2. The court dismissed the beneficiary's breach of fiduciary duty claim because the insurer was not required to provide coverage despite that it mistakenly accepted premiums. *Id.* at *3. Here, the payment of premiums does not change the fact that Mr. Butler was not covered by the life insurance

24

portion of the Plan when he died, and Hartford is not estopped from denying benefits because it allegedly erroneously accepted several months of premiums.

This conclusion is also supported by the plain language of the Plan, which states that clerical errors "will not extend the insurance of any person if that insurance would otherwise have ended or been reduced as provided by The Policy." Life Policy at 6. Mr. Butler's terminated life insurance coverage is not renewed or continued by CBIZ's alleged premium collection or Hartford's alleged premium acceptance after February 15, 2023. *See Grooms v. Reliance Standard Life Ins. Co.*, No. 1:08CV795, 2009 WL 2878448, at *6 (M.D.N.C. Sept. 3, 2009) ("[T]he language of the PAI Policy makes clear that Wachovia's clerical error in deducting premiums in the October paycheck does not affect the determination of when Plaintiff's coverage ended under the PAI Policy.").

For these reasons, the Court finds that Ms. Butler has failed to plead a plausible claim for breach of fiduciary duty against Hartford, and grants its motion to dismiss Count II.

## CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED THAT**:

1. CBIZ's Motion to Dismiss (ECF No. 32) is **DENIED in part** and **GRANTED in part** as stated herein.

2. Hartford's Motion to Dismiss (ECF No. 38) is **GRANTED**.

Date: February 21, 2025

*s/Katherine Menendez*
Katherine Menendez
United States District Judge